IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MATTHEW L. MCKINNEY                                      PLAINTIFF

v.                          Civil No. 10-5073

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                          DEFENDANT

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Matthew McKinney, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.    <u>**Procedural Background**</u>:

The plaintiff filed his application for SSI on September 26, 2006, alleging an onset date of October 10, 1985, due to a learning disability, borderline intellectual functioning ("BIF"), personality disorder, shoulder pain, back pain, obesity, headaches, and poor memory.  Tr. 137, 151.  An administrative hearing was held on June 12, 2008.  Tr.13-59.  Plaintiff was present and represented by counsel.  At this time, plaintiff was 22 years of age and possessed the equivalent of a high school education.  Tr. 21.   He had no past relevant work ("PRW") experience.  Tr. 21.

On September 18, 2008, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's shoulder pain, back disorder, obesity, BIF and personality disorder did not meet or equal any Appendix 1 listing.  Tr. 69-72.  The ALJ determined that plaintiff maintained

the residual functional capacity ("RFC") to perform medium work that does not involve climbing ladders, scaffolds, or ropes; exposure to unprotected heights or dangerous equipment/machines; the operation of vehicles; or the performance of overhead work. Tr. 72-74. From a mental standpoint, Plaintiff was also limited to work involving no more than simple math, writing, and reading; simple and non-complex instructions; interpersonal contact with co-workers and the public that is incidental to the work performed; the complexity of the tasks is learned and performed by rote; the work is routine and repetitive; the work involves few variables and little judgment; and, the supervision required is simple, direct, and concrete. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as a hand packager and small products assembler. Tr. 75-76.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 2, 2010. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the

AO72A
(Rev. 8/82)

decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A.    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-

3

(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

III.   **Evidence Presented:**

On October 16, 1999, Plaintiff was involved in a motor vehicle accident, and sustained a skull fracture and a hematoma.  Tr. 160-162.  A significant loss of consciousness was also noted.  Unfortunately, the records documenting his treatment for these injuries are illegible.  However, based on the summarization provided by Plaintiff's counsel, it appears as though a CT scan and other tests showed no significant abnormalities.  Tr. 160-162.

On November 27, 2006, Plaintiff underwent a general physical exam with Dr. Neil Mullins.  Tr. 183-189.  Plaintiff complained of a learning disability, pain in both shoulders, pain in his lower thoracic spine and lumbosacral area, and frequent headaches.  An examination revealed a normal range of motion in all areas with no joint abnormalities or muscle atrophy noted.  Dr. Mullins diagnosed Plaintiff with a learning disability, right shoulder pain, chronic lumbosacral pain, severe obesity, very diminished eye sight, and chronic headaches.  Tr. 183-189.

On December 6, 2006, Plaintiff underwent a mental status exam and intellectual assessment with Dr. Mary Sonntag.  Tr. 190-193.  He reported being involved in an automobile accident and sustaining a head injury resulting in a skull fracture and a blood clot on his brain.  After this accident, Plaintiff stated that his memory deteriorated as did his ability to read and write.  I. Q. testing revealed that Plaintiff was functioning within the borderline to mildly mentally retarded range of intellect.  The wide range between his subtest scaled scores strongly

4

suggested the presence of learning disabilities.  Dr. Sonntag noted that his mood and affect were normal, but he gave up easily without even looking at or listening to the stimulus questions.  Due to his brain injury and the suggestion of organicity, she recommended that Plaintiff undergo further evaluation by a neuropsychologist for a definitive diagnosis.  However, Dr. Sonntag diagnosed Plaintiff with mild mental retardation and dependent personality disorder and assessed him with a global assessment of functioning ("GAF") score of 55.  She also noted a speech impediment, an inability to drive because he could not pass the licensing exam, poor concentration, extremely poor persistence, and slow pace. Plaintiff was able to shop for groceries, clothing, and personal items with his parents; wash dishes; cook occasionally; and, clean his room.  Tr. 190-193.

On October 29, 2007, Dr. Sonntag completed a second mental diagnostic evaluation.  Tr. 220-229.  Again, Plaintiff tested within the borderline level of intellectual functioning and exhibited a learning disability.  However, this time, she was able to rule out mild mental retardation as a diagnosis.  Dr. Sonntag diagnosed him with dependent personality disorder and assessed him with a GAF of 58.  She noted that he had no difficulty communicating in a socially adequate manner, had good capacity to communicate in an intelligible and effective manner, good capacity to cope with the typical mental/cognitive demands of basic work-like tasks, fair ability to attend and sustain concentration on basic tasks, good capacity to sustain persistence in completing tasks, and good capacity to complete work-like tasks within an acceptable time frame.  Tr. 220-229.

Dr. Sonntag also completed an RFC assessment.  She determined Plaintiff would have moderate limitations understanding and remembering complex instructions.  Dr. Sonntg stated

5

he would probably have no problem with repetitive type tasks where memory or judgment would be minimized.  However, she did indicate that his shyness would be troublesome.  Tr. 220-229.

IV.    **Discussion**:

We first evaluate Plaintiff's subjective complaints.  When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004).  However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004).  The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints.  *Id.*  Even so,

6

the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

1.    **Mental Limitations:**

As previously discussed, Plaintiff has alleged disability due borderline intellectual functioning, mild mental retardation, and personality disorder.  We note that Plaintiff failed to seek out any mental health treatment for his condition during the relevant time period. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).  The only evidence concerning Plaintiff's mental status is two consultative exams conducted by Dr. Sonntag.  Dr. Sonntag assessed Plaintiff with a GAF between 55 and 58, and ultimately determined that Plaintiff had no more than moderate limitations in any area of functioning.  Further, although he alleges to have been enrolled in special education classes, Plaintiff was able to attend and graduate high school.  And, he reported having friends and the ability to get along with others. The only job he held was at a sheltered workshop.  He reported no difficulties there, rather quit because they did not pay him enough to buy the gas to get to and from work each day. Therefore, it does not appear that Plaintiff's BIF or personality disorder has interfered with his ability to perform work-related activities.

Although Dr. Sonntag's initial exam revealed a possible diagnosis of mild mental retardation, she was able to rule this out upon further testing.  Plaintiff contends that the ALJ erred by failing to develop the record with regard to Dr. Sonntag's opinions.  He contends that

her two examinations are in direct conflict with one another.  However, Dr. Sonntag indicated that she did not feel Plaintiff had put forth adequate effort on the testing performed in December 2006.  Tr. 224.  As such, in October 2007, he was warned that if he did not put forth adequate effort, testing would cease and he would be assigned to another examiner.  Plaintiff then completed testing with adequate effort noted.  Accordingly, we believe the ALJ was correct in relying on the October 2007 testing, rather than the December 2006 testing.  No further development of the record was required. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (holding that the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled).

### 2.   <u>Physical Limitations:</u>

Plaintiff also alleges disability due to pain, obesity, and headaches.  We note that Plaintiff has not sought out treatment for any of these conditions. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing).  The record does contain illegible records documenting Plaintiff's treatment following an automobile accident in 1999 in which he sustained a head injury.  However, Plaintiff's counsel concedes that all tests conducted were negative.  And, there is no further objective evidence to indicate that Plaintiff has residual physical limitations associated with the accident.  The only physical exam of record actually reveals no range of motion limitations, atrophy, weakness, or decreased sensation. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).  Further, Plaintiff was taking only

8

Ibuprofen to treat his pain. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). As such, we can not say Plaintiff's physical impairments were disabling.

### 3.   Activities of Daily Living:

Plaintiff's own reports concerning his daily activities also undermine his claim of disability.  Plaintiff told Dr. Sonntag that he could shop for groceries, clothing, and personal items with his parents; wash dishes; cook; and, clean his room.   His testimony at the administrative hearing also reveals that he was able to assist with the care of his disabled father, with whom he resided; vacuum; clean the bathroom; count change; play the guitar; and, associate with friends. Tr. 24, 27-31.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  We find these activities to be inconsistent with a finding of disability.

### 4.   Witness Testimony:

Plaintiff's mother and father both testified regarding Plaintiff's impairments.  We note, however, an ALJ is not required to accept a statement from a witness who will benefit financially from a determination of disability, *Buckner v. Apfel,* 213 F.3d 1006, 1013 (8th Cir.2000). This

AO72A
(Rev. 8/82)

determination was clearly within the ALJ's province.  *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

**B.    The ALJ's RFC Assessment:**

We next examine the ALJ's RFC assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or his RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations."  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ properly considered plaintiff's subjective complaints, the objective medical evidence, and the RFC assessments of the non-examining, consultative doctors. On January 8, 2007, Dr. Brad Williams completed a mental RFC assessment. Tr. 194-211.  After reviewing Plaintiff's medical records, he concluded Plaintiff would be moderately limited with regard to understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; making simple work-related decisions; completing a normal

10

workday or workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; setting realistic goals; and, making plans independently of others.  Tr. 194-211.

On January 12, 2007, Dr Christine Slocomb reviewed Plaintiff's medical records and concluded Plaintiff's physical impairment was non-severe.

After reviewing the entire medical record, we conclude that substantial evidence supports the ALJ's RFC assessment.  As previously noted, Plaintiff did not seek out consistent medical treatment for his mental or physical impairments during the relevant time period.  The only examination of record revealed no range of motion limitations or restrictions.  As we can find no indication in the record that any of his treating doctors limited his physical activities or found his impairments to be disabling, the ALJ's RFC will stand.  *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).  Substantial evidence supports the ALJ's determination that Plaintiff maintained the residual functional capacity ("RFC") to perform medium work that does not involve climbing ladders, scaffolds, or ropes; exposure to unprotected heights or dangerous equipment/machines; the operation of vehicles; or the performance of overhead work.  From a mental standpoint, Plaintiff is also limited to work involving no more than simple math, writing, and reading; simple and non-complex instructions; interpersonal contact with co-workers and the public that is incidental to the work performed; the complexity of the tasks is learned and performed by rote; the work is routine and repetitive;

11

the work involves few variables and little judgment; and, the supervision required is simple, direct, and concrete.

###    C.    **Vocational Expert's Testimony**:

Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence.  *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir. 1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

The vocational expert testified that a person of plaintiff's age, education, and work background with the above RFC, could still perform work as a hand packager and small products assembler.  We find substantial evidence to support the ALJ's determination that plaintiff could perform these jobs.

## V.    **Conclusion**:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

12

AO72A
(Rev. 8/82)

DATED this 9th day of August 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

13